Victor E. Gregory and wife, Ethel Gregory v. Commissioner. Billy G. Gregory and wife, Estelle A. Gregory v. Commissioner.
Gregory v. Comm'r
Docket Nos. 5821-69, 5847-69.
United States Tax Court
T.C. Memo 1971-291; 1971 Tax Ct. Memo LEXIS 41; 30 T.C.M. (CCH) 1232; T.C.M. (RIA) 71291; November 11, 1971, Filed *41 Held: On the facts submitted, no partnership existed between Victor and Billy Gregory. Held further: Billy has failed to show he is entitled to a deduction for additional business expenses in the amount of $196. Richard H. Frank, Jr., 7th Floor, Third Nat'l Bank Bldg., Nashville, Tenn., for the petitioners. John M. Wylie, for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent determined deficiencies in the income tax and additions to tax of petitioners for the taxable years and in the amounts as follows: Addition to Tax
Taxable
Sec. 6653(a)
Petitioners
Year
Deficiency
I.R.C. 1954
Victor E. Gregory and Ethel Gregory
1964
$389.19
$19.46
1965
142.90
7.15
1966
122.70
6.14
Billy G. Gregory and Estelle A. Gregory
1964
674.82
33.74
1965
160.83
8.04
1966
95.94
4.80
*42 Petitioners have introduced no evidence to show that the deficiencies in income tax were not due to negligence or intentional disregard of rules and regulations within the meaning of section 6653(a). Thus, to the extent that the income tax deficiencies are sustained, the additions to tax under section 6653(a) will also be sustained. Concessions have been made by both parties and the issues remaining for decision are 1233 (1) whether the business relationship between the petitioners Victor E. Gregory and Billy G. Gregory was such as to constitute a partnership with the result that Billy is liable for tax on 50 percent of the income of the heavy equipment salvage operation, and (2) whether Billy Gregory is entitled to a deduction for an additional business expense in the amount of $196.00. Findings of Fact At the time the petitions in these cases were filed all the petitioners maintained their legal residences in Nashville, Tennessee. Each married couple filed joint Federal income tax returns for the years in question with the district director of internal revenue, Nashville, Tennessee. Billy and Victor Gregory are brothers. At the time of trial Victor was 49 years of age. *43 His education was limited, having completed only the fifth grade. He had no knowledge of bookkeeping or accounting. During 1964 through 1966 Victor worked as a diesel mechanic for Power Equipment Company at Nashville. He went to work in the morning at 8 a.m. and often worked until 6 or 7 o'clock at night. Power Equipment Company was in the business of selling new heavy construction equipment and repairing used heavy construction equipment for resale. It purchased large quantities of parts for the repair of heavy construction equipment from Thompson and Green, a parts supply house in Nashville. Victor had purchased parts at Thompson and Green, a parts supply house in Nashville. Victor had purchased parts at Thompson and Green and other supply houses for his employer and was known personally at these supply houses. Billy Gregory is the younger brother of Victor. At the time of trial he was 43 years of age. Prior to November of 1969 Billy had been employed by the Internal Revenue Service in Nashville for sixteen and onehalf years. He was a revenue officer responsible for collecting delinquent tax accounts. During his career at the I.R.S. he was promoted to the highest position available *44 to a revenue officer. In addition to his experience as a revenue officer, Billy had studied some accounting in a business college. After Billy left the I.R.S. in November 1969, he began working for the State of Tennessee. During the years in issue, a used heavy equipment business was operated in the name of Victor Gregory on Kassia Street in Nashville. The business was engaged in buying and selling used heavy construction equipment, repairing it, and selling it for a profit. The land on which the repair business was conducted was owned jointly by Billy and Victor as tenants in common. On this land was a building approximately 28 feet wide and 70 feet long with a value of approximately $1,500. Some of the repair work done on the equipment was performed inside this building while part of the work was done outside the building. In the operation of this business, Victor repaired the equipment that was purchased for resale. The used equipment which Victor repaired was purchased from various sources. The mechanics with whom Victor worked at Power Equipment Company knew of his outside activity and would tell him if they saw or learned of an old piece of equipment which was for sale. Also, *45 some pieces of equipment were purchased from the Metropolitan Government of Davidson County, Tennessee. Many of the parts used to repair the used equipment purchased for this business were acquired at Thompson and Green in Nashville. Victor believed that the business operated on Kassia street was in direct competition with his employer. He further believed that if his employer found out about it he would be fired from his job. Because he was well known at Thompson and Green and other parts houses in Nashville, and because of the long hours he worked at Power Equipment Company, he asked Billy to purchase some of the parts used to repair the equipment purchased by the business. Billy made several purchases during the years in question, as follows: 1964
seven purchases, aggregating
$104.35
1965
twenty-two purchases, aggregating
303.63
1966
thirteen purchases, aggregating
239.67
In April of 1964 Billy and Victor opened a joint checking account at the First American National Bank in Nashville. The account was styled "Victor Edward Gregory or Billy G. Gregory" and was assigned account No. XXX-053-8. This account was used during the years in issue to deposit *46 some of the sale proceeds from the sale of heavy equipment, deposit proceeds of loans obtained from First American National Bank which were used in the business, to pay expenses of the business, and for other general business purposes. Billy wrote one check on the account in 1964, one check in 1965 and two checks in 1966. All other checks written on this account for the years in issue were written by Victor. Most of the deposits to this account during this time were made by Billy. 1234 In addition, Billy wrote thirty-one checks totaling $5,591.76 on his and his wife's joint checking account, No. XXX-326-7, for expenses incurred by the business and made additional purchases or payments totaling approximately $1,029.09 from funds, the source of which is not revealed in the record. Also, Billy purchased 8 cashier's checks totaling $3,981, the funds from which were used to pay for the purchase of equipment for the business. Victor specifically furnished the money to purchase one of the cashier's checks in the amount of $100. Billy purchased these for Victor because Victor's hours of employment precluded him from going to the bank during banking hours. During 1965 and 1966 it was *47 necessary for Victor to borrow money from a bank for the business. The bank would not loan the money to Victor without the co-signature or endorsement of Billy, who was well known to the bank. As a result, Billy co-signed promissory notes totaling $3,750 during this time. The proceeds of the loans were deposited in the joint checking account of Victor and Billy and later used in the heavy equipment repair business. Because of Victor's position with Power Equipment Company, Billy consented to deliver written bids to the Metropolitan Government of Davidson County for the purpose of bidding on used pieces of heavy construction equipment which were to be sold by the Metropolitan Government. Billy also helped Victor pick up and deliver some of the used equipment which was repaired and sold to third parties. On one occasion, a purchaser tried to buy a piece of equipment from Power Equipment Company which they did not have. Victor told the prospective purchaser that he knew where such equipment might be obtained and used Billy as a go-between to negotiate the deal. In that connection, Billy received one check from the prospective purchaser on Victor's behalf. Billy negotiated the sale for *48 his brother because of Victor's position with Power Equipment Company and his fear of being fired for being in competition with his employer. Part of the checks written on Billy's and his wife's joint checking account had the following notations thereon: Date of
Amount of
Check
Check
Notation on Check
Payee
1-27-64
$ 400.00
Cash
7- 5-65
350.00
Loan
Victor E. Gregory
7- 6-67
225.00
Loan to Victor for F-600
Cash
9- 1-67
125.00
Loan to Victor for Bid
State of Tennessee
12-19-64
20.40
Victor
Thompson & Green Machinery Co., Inc.
11-21-64
515.00
TD-6 Loader - Loan to Victor
M. Cohen Iron & Metal Co.
11-23-65
257.50
Payment on Victor's Note
first American Nat'l Bank
1-27-64
50.00
Disc - Loan to Victor
McDowell & McDowell
11- 7-64
1,900.00
Loan
Victor E. Gregory
12- 8-64
700.00
Loan to Victor
Cash
12-11-64
300.00
Loan to Victor to buy loader
Cash
12-28-64
85.44
TD-6 - Loan to Victor
R. H. Chilton Co., Inc.
In addition to the other checks written by Victor on the joint account of Victor and Billy, he wrote the following checks on the following dates with the following notations on such checks: Date of
Amount of
Check
Check
Notation on Check
Payee
5-22-65
$303.03
For repayment of loan
Billy Gregory
7- 4-65
311.75
For repayment of loan for TD-9
Billy Gregory
1- 3-66
400.00
Repayment of loan
Billy Gregory
6-17-66
500.00
Repayment of loan on did Depossit
Billy Gregory
*49 No promissory notes were ever executed by Victor and given to Billy covering any of the advances which Billy made to the business. There was no record of the amount of the advances given to Victor by Billy nor was there any record of the amount he repaid. Billy advanced this money to Victor out of a sense of moral duty, because Victor had financially assisted Billy in obtaining his education. He nevertheless hoped that Victor would be successful in the business and be able to repay as much of the money as possible; however, Billy would not have instituted legal proceedings against his brother to recover such money. At the end of each of the years in issue, Billy prepared Victor and Ethel Gregory's 1235 returns. Victor reported some of the receipts and expenses of the used equipment business on Schedule C of his joint returns for each of the years in issue. Some of the receipts and expenses were omitted and not reported by anyone. The following receipts, expenses, and net profits were reported on Schedule C of Victor's joint returns for each of the years in issue: 1964
1965
1966
Gross Receipts
$3,808.00
$5,854.50
$9,795.00
Cost of Goods Sold 1,914.80
[1] 2,490.98
4,323.10
Gross Profit
$1,893.20
[1] $3,363.52
$5,471.90
Expenses:
Depreciation
184.84
0
88.42
Taxes
33.30
0
45.34
Rent on Business Property
0
480.00
1,400.00
Repairs
66.95
0
0
Insurance
33.00
0
0
Interest on Business Indebtedness
427.00
[2] 343.09
[2] 450.01
Other Business Expenses 721.02
1,732.71
1,702.11
Net Profit $ 427.09
[3] $ 807.72
[4]
*50 Billy reported on his joint returns for the years in issue the following income from rent and interest received from Victor which were the same figures deducted as "Rent on Business Property" and "Interest on Business Indebtedness" on Schedule C of Victor's joint returns: 1964
1965
1966
Rent
$0
$480.00
$1,400.00
Interest
427.00
326.84
386.01
Total
$427.00
$806.84
$1,786.01
Billy prepared Victor's joint tax return, including the Schedule C for the repair business. The manner of preparing the Schedule C was to sort through all the receipts and invoices that Victor accumulated for each year. The Schedule C was prepared from the resulting figures. Because of all the advances made to the business by Billy, Victor wanted to pay him something as interest for the use of his money and as rent for his part ownership in the property on which *51 the business was conducted. Victor thought that Billy should have one-half of what he made for the year. Because Victor didn't have any money to pay Billy, however, he told him to add it on to what he already owed him. Billy put these amounts in the Schedule C as rents and interest on an arbitrary basis. These amounts were deducted by Victor and included in Billy's joint tax returns although no money was ever given to Billy by Victor for these items. During the years in issue, Billy purchased, repaired, and sold several used cars. These cars would be repaired after normal working hours by him. The profit from the sale of some of these cars was reported on Schedule D of his tax return for the year 1964. Respondent determined in its statutory notice of deficiency mailed to Billy and Estelle Gregory that Billy Gregory failed to report income of $201.56 in 1964, and $310.67 in 1965 from the sale of cars and a loss of $224.32 in 1966 from the sale of cars. Petitioners conceded all adjustments in the statutory notices of deficiencies issued to them except for the issue of whether or not a partnership existed between Billy and Victor Gregory and whether or not Billy and Estelle Gregory *52 are entitled to an additional business expense deduction in the amount of $196 relating to the repair and sale of used cars by Billy. Opinion The first issue involved herein concerns the nature of the business relationship between two brothers, Victor and Billy Gregory, in the operation of a used heavy construction equipment repair business. Respondent contends a partnership existed between Billy and Victor, noting that both Billy and Victor made substantial contributions to the business, Billy by advancing capital and attending to daily business needs and Victor, by servicing the used equipment to be resold. In addition, respondent contends they agreed to share the profits of the business. As a result, respondent argues that Billy should be taxed on fifty percent of the income of the 1236 business. Petitioners, on the other hand, contend that there was never any intention on the part of Victor and Billy to enter into a partnership, and thus, no partnership existed. Section 761(a) [1] of the Code defines a partnership to include "a syndicate, group, pool, joint venture or other unincorporated organization through or by means of which any business, financial operation, or *53 venture is carried on * * *." The question of whether the relationship between Billy and Victor constitutes a partnership within the meaning of section 761(a) is one of fact to be determined from all existing circumstances. No one factor controls. ; ; . Both parties rely on the following quotation from the landmark case in this area, , as authority for their respective positions: The question is not whether the services or capital contributed by a partner are of sufficient importance to meet some objective standard supposedly established by the Tower case, but whether, considering all the facts - the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income *54 and the purposes for which it is used, and any other facts throwing light on their true intent - the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise. There is nothing new or particularly difficult about such a test. Triers of fact are constantly called upon to determine the intent with which a person acted. * * * On the basis of the record herein, we hold that no partnership existed between Billy and Victor. Respondent cites three factors which, he contends, support his theory that a partnership relationship existed between Victor and Billy. First, Victor's background was inadequate to take care of the financial and administrative matters of the business. These were taken care of by Billy. Second, the advances made to the business by Billy were not evidenced by any promissory notes nor was there any record of the amount of advances. Third, the two brothers agreed to share the profits of the enterprise. Respondent's reliance on these factors is misplaced. The record in this case shows that, rather than lacking the background to perform the day to day matters of the business, Victor simply lacked the time *55 to do them. He worked long hours at his job with Power Equipment Company and as a result was unable to perform the daily duties of his repair business. Moreover, his outside activity was in direct competition with one aspect of his employer's business and he was afraid he would be fired if he was caught engaging in the repair business. Billy, as an accommodation to his brother, and because his job allowed him greater freedom of movement, agreed to perform these odd jobs for Victor. There was nothing included in these duties that required a person with more education than Victor to do them; they merely required a person who had the time to get them done. The fact that the advances in question were not evidenced by promissory notes, although one of the factors to be considered, is not controlling herein. Were this the usual business arrangement, the lack of any notes evidencing the debt might carry more weight, but in the present case the relationship between Billy and Victor was such that the giving of notes was inappropriate. Family ties and obligations were enough to bind Victor on these loans, and as the record shows, he made several repayments on them during the years in question. *56 Respondent's last assertion that Billy and Victor agreed to share the profits is not in accord with the facts. Victor wanted to pay Billy something for the use of his money and also for the use of his one-half interest in the property on which the business was conducted. He though a reasonable figure was about one-half of what he made from the business. Given these facts it cannot be seriously argued, as respondent does, that Billy and Victor had an agreement all along that they would share the profits of the business. 1237 Based on the foregoing discussion and the facts presented, we hold that Billy and Victor never intended to enter into a partnership and thus, none existed. Accordingly, respondent's determination that Billy is taxable on fifty percent of the income of the repair business is not sustained. The second issue concerns the deductibility of additional business expenses by Billy incurred in repairing used cars for resale. The burden of proof is on petitioners to prove the respondent's determination is erroneous. . Petitioner has introduced no evidence to show that he is entitled to any greater expense than *57 allowed by respondent in its statutory notice of deficiency. Accordingly, the burden of proof has not been overcome and respondent's determination on this issue is sustained. Decisions will be entered under Rule 50. Footnotes
1. Because of a math error in computing these figures, the return shows $2480.98 and $3373.52. ↩
2. Includes interest expense other than to Billy Gregory. ↩
3. Because of math error this figure is shown on the return $817as.72. ↩
4. Because of a ten cent mathematical error, the figure shown on the return is $1786.12.↩
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩